**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIN HOLMER, *et al.*, | ) | CASE NO. 1:23-cv-747 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| ALCOVE VENTURES, LLC, *et al.*, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendants. | ) | **ORDER** |
| | ) | |

Currently pending before the Court is Defendants' motion to dismiss the complaint and compel arbitration. (ECF No. 7). Plaintiffs have filed a response in opposition, (ECF No. 8), and Defendants have filed their reply, (ECF No. 9). For the following reasons, the motion is **GRANTED IN PART AND DENIED IN PART**, to the extent that: (i) the request to compel arbitration of Plaintiffs' claims against Defendant Alcove Ventures, LLC is **GRANTED**; (ii) Defendant Mindcare Solutions Group, Inc. is **DISMISSED** as a defendant; and (iii) the case is **STAYED** pending arbitration.

## I.     BACKGROUND

On April 13, 2023, Plaintiffs Erin Holmer,[1] Melanie Howell, and Conita Oakes filed a complaint against Defendants Alcove Ventures, LLC d/b/a Psych360 ("Psych360") and Mindcare Solutions Group, Inc. ("Mindcare"). (ECF No. 1). Plaintiffs alleged that: (i) they had been employed by Defendants, a healthcare provider group, as Clinical Field Specialists; (ii) Defendants qualified as "employers" under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*,

---

[1] Plaintiff Erin Holmer has been dismissed from this action pursuant to the parties' joint stipulation of dismissal. (ECF Nos. 10, 11). Moving forward, references to Plaintiffs will refer solely to the remaining plaintiffs, Melanie Howell and Conita Oakes.

and Ohio Rev. Code § 4111.01, *et seq.*; (iii) Defendants had failed to keep accurate records of the hours and overtime worked by Plaintiffs; and (iv) Defendants had failed to pay overtime compensation to Plaintiffs.  (*Id.* at PageID #3–7).  Plaintiffs asserted two causes of action against Defendants: (i) FLSA Overtime Violations, 29 U.S.C. § 216(b) (Count One); and (ii) Ohio Overtime Violations, Ohio Rev. Code § 4111.10(A) (Count Two).  (*Id.* at PageID #9–10).

On May 4, 2023, Defendants filed a motion to dismiss the complaint and compel arbitration.  (ECF No. 7).  Defendants argue that Plaintiffs' complaint should be dismissed or stayed pending arbitration because Plaintiffs signed employment agreements wherein they agreed to arbitrate their employment-related claims against Psych360.  (*Id.* at PageID #52–58).  Defendants attached the individual employment agreements between Plaintiffs and Psych360 (the "Employment Agreements"), which are practically identical save some specific terms of employment.  (ECF Nos. 7-3, 7-4).  The Employment Agreements contained, in relevant part, the following provisions concerning arbitration of certain disputes against Psych360 (the "Arbitration Agreement"):

> Any dispute arising out of or relating to this Agreement or the subject matter thereof, or any breach of this Agreement, including any dispute regarding the scope of this clause, will be resolved through arbitration administered by the American Health Law Association Dispute Resolution Service and conducted pursuant to the AHLA Rules of Procedure for Arbitration.  Judgment on the award may be entered and enforced in any court having jurisdiction.  The cost of the arbitration shall be shared equally, provided that the arbitrator(s) may, in their discretion, include the costs of the arbitration in its award.  This arbitration clause shall not prevent either party from seeking a temporary restraining order or temporary or preliminary injunctive relief from a court of competent jurisdiction to protect its rights under this Agreement.

(ECF No. 7-3, PageID #81–82; ECF No. 7-4, PageID #96–97).  Defendants also argue that Plaintiffs' claims against Mindcare should be dismissed because they failed to plausibly allege that

Mindcare qualified as their "employer" under the FLSA and the Ohio Minimum Fair Wage Standards Act ("OMFWSA").  (ECF No. 7, PageID #60–65).

On June 1, 2023, Plaintiffs filed their opposition to Defendants' motion to dismiss the complaint and compel arbitration, arguing that: (i) the Arbitration Agreement is both procedurally and substantively unconscionable; and (ii) Plaintiffs have sufficiently alleged facts to support that Mindcare was their "employer."  (ECF No. 8).  Defendants filed a timely reply in support of their motion to dismiss and compel arbitration.  (ECF No. 9).

The Court requested supplemental briefing on the issue of whether Plaintiffs knowingly and voluntarily waived their right to a jury trial, (ECF No. 12), and the parties' filed supplemental briefs in response, (ECF Nos. 13, 14).  As the matter is now fully briefed, the Court will first address Defendants' request to compel arbitration, before then resolving their request to dismiss Mindcare as a defendant for failure to state a claim.

## II.    MOTION TO COMPEL ARBITRATION

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, Defendants move the Court for an order compelling arbitration of Plaintiffs' claims against Psych360 under the terms of the Employment Agreements.  (ECF No. 7, PageID #52–59).  Defendants also move the Court to either dismiss the action in its entirety or stay the proceedings pending arbitration.  (*Id.* at PageID #59–60).

### A.    Legal Standard

A party may petition a court for an order directing the parties to arbitrate the claims before it.  9 U.S.C. § 4.  The Sixth Circuit applies a four-part test to determine whether a court should stay proceedings and compel arbitration: (1) did the parties agree to arbitrate; (2) does the scope of that agreement cover the dispute at issue; (3) if federal statutory claims are asserted, did

Congress intend those claims to be non-arbitrable; and (4) if the court concludes that some, but not all, of the claims in the action are subject to arbitration, should the court stay the remainder of the proceedings pending arbitration.  *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).  The party that opposes a motion to compel arbitration must demonstrate that there is a genuine dispute of material fact as to whether there is a valid agreement to arbitrate between the parties.  *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

"Mandatory arbitration agreements in the employment context are governed by the Federal Arbitration Act, which evidences a strong policy preference in favor of arbitration."  *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001)).  The Sixth Circuit has also developed a strong presumption in favor of arbitration.  *See Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503–04 (6th Cir. 2007); *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 578 (6th Cir. 2003).  As such, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration.  *Stout*, 228 F.3d at 714 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)); *see also Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) ("It is a well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration." (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)).

B.      **Initial Arbitration Analysis**

First, Plaintiffs and Psych360 entered into an agreement to arbitrate.  The Arbitration Agreement, contained within the Employment Agreements, provides that the parties will resolve certain disputes through arbitration administered by the American Health Law Association

("AHLA") Dispute Resolution Service.  (ECF No. 7-3, PageID #81–82; ECF No. 7-4, PageID #96–97).  Plaintiffs signed the Employment Agreements, (ECF No. 7-3, PageID #81–94; ECF No. 7-4, PageID #97), and initialed the individual pages of the agreements, (ECF No. 7-3, PageID #82; ECF No. 7-4, PageID #96, 98–108).  Second, the scope of the Arbitration Agreement is broad and covers the claims asserted in the instant action.  The arbitration clause provides that: "Any dispute arising out of or relating to this Agreement or the subject matter thereof, or any breach of this Agreement, including any dispute regarding the scope of this clause, will be resolved through arbitration . . ."  (ECF No. 7-3, PageID #81–82; ECF No. 7-4, PageID #96).  This language clearly encompasses all disputes arising out of the employment relationship between Plaintiffs and Psych360, including wage-related claims.[2]

Third, Plaintiffs' claims are arbitrable.  Plaintiffs alleged that Defendants failed to pay overtime wages in violation of the FLSA and Ohio law.  (ECF No. 1, PageID #9–10).  The FLSA generally requires that an employer pay an employee an established hourly minimum wage for up to 40 hours per week and overtime compensation of one and one-half times the employee's regular rate of pay for hours worked in excess of 40 in a work week.  29 U.S.C. §§ 206(a), 207(a)(1).  It is well-settled that claims under the FLSA are arbitrable.  *Floss v. Ryan's Fam. Steak Houses, Inc.*, 211 F.3d 306, 313 (6th Cir. 2000); *Townsend v. Stand Up Management, Inc.*, No. 1:18-cv-2884, 2019 U.S. Dist. LEXIS 133635, at *19 (N.D. Ohio Aug. 8, 2019) ("The Sixth Circuit has expressly held that FLSA claims are not exempt from arbitration." (citing *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018))); *see also Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122, 123

---

[2] The parties also agreed to resolve any dispute over the scope of the Arbitration Agreement through arbitration.  (ECF No. 7-3, PageID #81–82; ECF No. 7-4, PageID #96).  Because the parties delegated the threshold arbitrability question to the arbitration process, unless Plaintiffs can demonstrate the Arbitration Agreement is unenforceable, the Court must respect the parties' agreement and refer any questions over the scope of the Arbitration Agreement to the arbitrator.  *See McGee v. Armstrong*, 941 F.3d 859, 866–67 (6th Cir. 2019).

(2d Cir. 2017) (holding that FLSA claims are arbitrable); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir. 2002) (same).

Plaintiffs' claims under the OMFWSA are likewise arbitrable. The OMFWSA incorporates the same overtime provisions as the FLSA. Ohio Rev. Code § 4111.03 provides: "An employer shall pay an employee for overtime at a wage rate . . . , in the manner and methods provided in . . . section 7 and section 13 of the [FLSA]." "Because the FLSA and the [OMFWSA] have the same overtime requirements, the outcomes will be the same and the claims can be evaluated together." *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385 n.1 (6th Cir. 2016). Moreover, there is no evidence that Congress did not intend for wage-law claims under state law, including those related to overtime pay, to be non-arbitrable.[3]

### B.     Plaintiffs' Objections to Arbitration

In their opposition brief, Plaintiffs did not challenge the validity of the Employment Agreements, the scope of the Arbitration Agreement, or whether the instant claims were arbitrable. Plaintiffs solely argued that the Court should not compel arbitration because the Arbitration Agreement was unconscionable and, therefore, unenforceable.

#### 1.     *Unconscionability*

Under the FAA, arbitration agreements are considered "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. "One such ground is unconscionability: If a party shows that an agreement to arbitrate is unconscionable, the agreement will not be enforced and, consequently, the parties will not be compelled to arbitrate their disputes." *Dreher v. Eskco, Inc.*, No. 3:08-cv-325, 2009 U.S. Dist. LEXIS 63300, at *8 (S.D. Ohio July 21, 2009) (citing *Morrison v. Circuit City Stores, Inc.*, 317

---

[3] The Court was unable to locate any case where an overtime compensation claim under the OMFWSA was found to be non-arbitrable.

F.3d 646, 666 (6th Cir. 2003)).  Under Ohio law, the doctrine of unconscionability is comprised

of two distinct components: (i) "substantive unconscionability, *i.e.*, unfair and unreasonable

contract terms"; and (ii) "procedural unconscionability, *i.e.*, individualized circumstances

surrounding each of the parties to a contract such that no voluntary meeting of the minds was

possible." *Morrison*, 317 F.3d at 666 (quoting *Jeffrey Mining Prods., L.P. v. Left Fork Mining

Co.*, 143 Ohio App. 3d 708, 758 N.E.2d 1173, 1181 (Ohio Ct. App. 2001)) (internal quotation

marks omitted).  "To demonstrate that an arbitration clause is unenforceable, the party asserting

unconscionability must prove that the clause is *both* substantively *and* procedurally

unconscionable under Ohio law." *Tolbert v. Coast to Coast Dealer Servs.*, 789 F. Supp. 2d 811,

815 (N.D. Ohio 2011) (citing *Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 2009 Ohio 2054, 908

N.E.2d 408, 412 (2009)) (emphasis added); *see also Bruster v. Uber Techs. Inc.*, 188 F. Supp. 3d

658, 664 (N.D. Ohio 2016) ("Under Ohio law, a contract provision is unconscionable only if it is

both procedurally and substantively unconscionable." (citing *Scovill v. WSYX/ABC*, 425 F.3d

1012, 1017 (6th Cir. 2005)).

a.    Substantive Unconscionability

Substantive unconscionability focuses on the terms of the arbitration agreement and

whether they are fair and commercially reasonable. *Taylor v. Tech. Consumer Prods.*, No. 5:22-

cv-516, 2022 U.S. Dist. LEXIS 85479, at *4 (N.D. Ohio May 10, 2022) (citing *Collins v. Click

Camera & Video*, 86 Ohio App. 3d 826, 621 N.E.2d 1294, 1299 (1993); *Tolbert*, 789 F. Supp. 2d

at 815 (citing *Eagle v. Fred Martin Motor Company*, 157 Ohio App. 3d 150, 2004 Ohio 829, 809

N.E.2d 1161, 1170–71 (Ohio App. 2004)).  Courts have considered the following factors when

determining whether a contract is substantively unconscionable: "the fairness of the terms, the

charge for the service rendered, the standard in the industry, and the ability to accurately predict

the extent of future liability." *Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 69, 2009-Ohio-2054, 908 N.E.2d 408 (2009).

Plaintiffs contend that the arbitration agreements are substantively unconscionable because: (i) the cost-splitting provisions in the agreements impose unreasonable fees and costs on Plaintiffs and are designed to deter employees from asserting legal claims against Defendants; and (ii) the arbitration clause fails to adequately explain how to initiate and pursue arbitration.  (ECF No. 8, PageID #168–70).

First, the Court finds Plaintiffs' argument that the cost-splitting provisions render the arbitration agreement unconscionable is without merit.  "[W]hen a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).  The Sixth Circuit has expressly rejected the concept that cost-splitting provisions are *per se* unconscionable. *Morrison*, 317 F.3d at 658–59.  "A cost-splitting provision should be held unenforceable whenever it would have the 'chilling effect' of deterring a substantial number of potential litigants from seeking to vindicate their statutory rights."  *Id.* at 661.  Both the Sixth Circuit and Ohio courts have adopted a case-by-case approach for determining whether arbitration costs are impermissibly prohibitive.  *See id.* at 659, 663; *Eagle v. Fred Martin Motor Co.*, 157 Ohio App. 3d 150, 2004-Ohio-829, 809 N.E.2d 1161, 1174 (Ohio Ct. App. 2004).

Notably, the mere fact that arbitration might impose higher fees than litigation in trial court is insufficient.  "The increased costs of arbitration over litigation must be '*so high* as to make access to the forum impracticable.'"  *Madhat v. Lipsey Communs., LLC*, No. 5:20-cv-764, 2020 U.S. Dist. LEXIS 161272, at *20 (N.D. Ohio Sep. 3, 2020) (quoting *Am. Express Co. v. Italian*

*Colors Rest.*, 570 U.S. 228, 236, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013)) (emphasis added); *see Grimes v. Modco, Inc.*, No. 3:18-cv-518-RGJ, 2020 U.S. Dist. LEXIS 48620, at *13–14 (W.D. Ky. Mar. 20, 2020).

Here, Plaintiffs have failed to provide any evidence on the cost of arbitration contemplated by the Arbitration Agreement. They also have not provided evidence to establish that the costs of arbitration in this case would be "so high" as to be prohibitive to Plaintiffs and impose an impermissible deterrent effect. Although they bear the burden, Plaintiffs did not present any evidence on: (i) the average cost of arbitration (either in general or through the arbitration administered by the American Health Law Association Dispute Resolution Service); (ii) the expected cost differential between arbitration and litigation in a judicial forum; or (iii) how the costs of arbitration might affect an individual with a similar "job description and socioeconomic background" to Plaintiffs. *See Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 481 (6th Cir. 2005) (holding that a plaintiff who failed to provide the above evidence also failed to meet his burden of demonstrating that arbitration costs were prohibitive).

Plaintiffs only provide their yearly salary ($46,800 and $56,000) and contend they cannot "cover potentially thousands of dollars in arbitration costs." (ECF No. 8, PageID #169). Without more evidence, Plaintiffs' assertions amount to mere speculation. The mere risk that a plaintiff might incur excessive or prohibitive costs is insufficient to render an arbitration agreement substantively unconscionable. *Green Tree*, 531 U.S. at 91–92; *Madhat*, 2020 U.S. Dist. LEXIS 161272, at *20 ("Mere risk that a plaintiff will incur 'massive' costs 'is too speculative to justify the invalidation of an arbitration agreement.'" (citations omitted)); *CSA-Credit Sols. of Am., Inc. v. Schafer*, 408 F. Supp. 2d 503, 512 (W.D. Mich. 2006) ("The party must show actual hardship, not mere risk that she would be required to bear prohibitive arbitration costs."). Plaintiffs have

failed to meet their burden of demonstrating that the increased cost of arbitration, particularly due to the cost-splitting provision, is "so high as to make access to the forum impracticable." *See Madhat*, 2020 U.S. Dist. LEXIS 161272, at *20. Accordingly, the cost of arbitration and the cost-splitting provision are not substantively unconscionable.

Plaintiffs' argument concerning the failure of the arbitration provision to explain how to initiate and pursue arbitration is likewise meritless. Plaintiffs argue that other courts have held arbitration provisions to be substantively unconscionable when they fail to adequately explain how to initiate and pursue the arbitration process, citing a single case—*Arnold v. Burger King*, 2015-Ohio-4485, 48 NE 3d. 69 (Ohio Ct. App. 2015). (ECF No. 8, PageID #170). The court in *Arnold* did not hold that the arbitration provisions in the relevant employment agreement were substantively unconscionable because they failed to adequately explain how to initiate and pursue the arbitration process. The court instead found the arbitration agreement substantively unconscionable, in part, because it: (i) was overbroad and sought to include disputes unrelated to employment; (ii) resulted in prohibitive costs; (iii) included an impermissible clause that subjected employees to updating terms and conditions incorporated in the agreement; and (iv) included ambiguous language concerning the limitation of remedies. *Arnold*, 2015-Ohio-4485, ¶84–104. Plaintiffs provide no citation to authority that an arbitration provision must detail how to initiate arbitration process. They also fail to provide evidence that they were actually confused about how to initiate/pursue the arbitration process contemplated in the Arbitration Agreement. As noted by Defendants, the AHLA's website is easily accessible and the button/link for filing an arbitration claim on that website is easily identifiable. (ECF No. 9, PageID #198–99). The AHLA Rules of Procedure for Arbitration are also readily available online, and Plaintiffs have not indicated or otherwise demonstrated that they requested these procedural rules or were denied access to them

by Defendants.  The mere fact that the Employment Agreements did not provide a copy of the AHLA Rules does not render the Arbitration Agreement substantively unconscionable.  *See Byars v. Dart Transit Co.*, 414 F. Supp. 3d 1082, 1093 (M.D. Tenn. 2019); *Yufan Zhang v. UnitedHealth Group*, 367 F. Supp. 3d 910, 917 (D. Minn. 2019).

b. Procedural Unconscionability

Having found the Arbitration Agreement is not substantively unconscionable, the Court need not address Plaintiffs' arguments concerning procedural unconscionability because a finding of unconscionability requires both procedural and substantive unconscionability.  Moreover, as explained below, Plaintiffs provide arguments and cite caselaw concerning a separate issue: whether Plaintiffs knowingly and voluntarily waived the right file a complaint concerning the instant claims in court.  As such, the Court will address that issue separately.

2. *Knowing and Voluntary Waiver of Right to File Suit in Federal Court*

To determine whether a plaintiff knowingly and voluntarily waived the right to pursue specific claims in federal court, the Court must consider the following factors: "(1) plaintiff's experience, background and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances."  *Morrison*, 317 F.3d at 668 (quoting *Adams v. Philip Morris. Inc.*, 67 F.3d 580, 583 (6th Cir. 1995)) (internal quotation marks omitted).  Ultimately, the burden is on Plaintiffs to demonstrate that they did not voluntarily and knowingly waive their right to a jury trial and to proceed in a federal forum.  *See Tillman v. Macy's, Inc.*, 735 F.3d 453, 460 (6th Cir. 2013); *see also K.M.C. Co. v. Irving Tr. Co.*, 757 F.2d 752, 758 (6th Cir. 1985) ("We agree that in the context

of an express contractual waiver the objecting party should have the burden of demonstrating that its consent to the provisions was not knowing and voluntary.").

In their opposition brief, within the subsection addressing procedural unconscionability, Plaintiffs list the five factors provided in *Morrison* for consideration when determining whether a waiver was knowing and voluntary.  (ECF No. 8, PageID #165 (citing *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 381 (6th Cir. 2005)).  Plaintiffs argue that they did not, and could not, knowingly and voluntarily waive their right to pursue FLSA claims in a judicial forum and their right to a jury trial by focusing on the first factor (Plaintiffs' experience, background and education) and the third factor (clarity of the waiver).  (*See id.* at PageID #166–68).

After reviewing Plaintiffs' opposition, the Court issued an order requesting supplemental briefing from the parties on the issue of whether Plaintiffs knowingly and voluntarily waived their right to a jury trial and the ability to pursue the instant claims before the Court.  (ECF No. 12). The Court noted that Plaintiffs appeared to have conflated and confused procedural unconscionability with the separate, distinct issue of whether a waiver of judicial forum and right to jury trial was voluntary and knowing.  Nevertheless, the Court found that Plaintiffs had sufficiently raised the knowing and voluntary waiver issue, albeit obliquely.  (*Id.* at PageID #209).

In their supplemental brief, Plaintiffs did not provide any additional arguments concerning the specific issue of whether they knowingly and voluntarily waived their right to a jury trial. Instead, they argue, for the first time, that FLSA and overtime claims are outside the scope of the Arbitration Agreement.  (ECF No. 14, PageID #224).  They also provided additional arguments on the substantive unconscionability of the cost-splitting provision.  (*Id.* at PageID #225–27). Because these arguments are outside the scope of the Court's request for supplemental briefing,

the Court will disregard them and will focus on the waiver arguments presented in Plaintiffs' opposition brief.

An analysis of the five *Morrison* factors follows. For the reasons stated therein, the Court finds that Plaintiffs have not met their burden of demonstrating that they did not knowingly and voluntary waive their right to proceed in a judicial forum.

a.      Plaintiffs' experience, background, and education

For this factor, Plaintiffs point to: (i) their position as licensed practical nurses, which is a position that does not require a bachelor's degree; and (ii) their lack of legal training, which includes them having no previous experience seeing, reviewing, or executing an employment arbitration agreement. (ECF No. 8, PageID #165–66; ECF Nos. 8-1, 8-2). The Court finds Plaintiffs' argument unpersuasive. First, Plaintiffs' lack of experience with arbitration agreements does not establish that they lack the ability to comprehend the arbitration provisions in their employment agreements. "There is no requirement that a person have legal experience or direct experience with arbitration or the drafting of contracts to be capable of understanding the basic language and intent of a contract, including a contract that provides for the arbitration of disputes." *Bowie v. Clear Your Debt, LLC*, No. 1:11-cv-1266, 2012 U.S. Dist. LEXIS 33981, at *10 (N.D. Ohio Mar. 14, 2012).

While a bachelor's degree may not be required to become a licensed practical nurse, such a position requires a high school diploma, GED, or other equivalent, as well as continuing education by completing a practical nursing certificate program from an accredited source (*e.g.*, associate's degree). Plaintiffs did not provide their actual educational background and do not confirm or deny that they obtained bachelor's degrees or higher. There is also no evidence or assertion that Plaintiffs lack any proficiency in English. Thus, Plaintiffs had sufficient experience

and education to allow them to understand and comprehend the arbitration provisions in their employment agreements and knowingly waive their right to proceed in a judicial forum. *See Hank v. Great Lakes Construction Co.*, 790 F. App'x 690, 699 (6th Cir. 2019) (holding that a plaintiff with a lack of business and legal experience, who possessed a GED and a post-secondary proficiency in reading and comprehension, had sufficient experience, background, and education to enter a voluntary and knowing waiver); *see also Kellum v. SavaSeniorCare, Ltd. Liab. Co.*, No. 12-cv-13056, 2013 U.S. Dist. LEXIS 45072, at *14 (E.D. Mich. Mar. 29, 2013) ("Plaintiffs are nurses. The Court can safely assume that they possess a level of education that would allow them to understand and comprehend the short one page EDR Program Agreement."). Accordingly, the Court finds that this factor weighs in favor of finding a knowing and voluntary waiver.

b.      Opportunity to consider and to consult with a lawyer

Plaintiffs provide no arguments addressing this factor. There are also no allegations or evidence to suggest that Plaintiffs did not have sufficient time, or that they were denied an opportunity to consider/review the Employment Agreements, including the Arbitration Agreement, and to consult with legal counsel. In fact, the Employment Agreements clearly indicate that Plaintiffs read and understood the terms of the Arbitration Agreement and had an opportunity to consult with legal counsel. Plaintiffs signed their respective Employment Agreements below the following all-capitalized paragraph:

> BY SIGNING THIS DOCUMENT, YOU CERTIFY THAT YOU HAVE RECEIVED, REVIEWED, UNDERSTAND, HAVE HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL AND NOW AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT. YOUR FAILURE TO ABIDE BY OR COMPLY WITH THE TERMS AND CONDITIONS OF THIS AGREEMENT MAY SUBJECT YOU TO DISCIPLINE UP TO AND

INCLUDING TERMINATION OF EMPLOYMENT, AS WELL AS FURTHER
LIABILITY, AS STATED HEREIN.

(ECF No. 7-3, PageID #82; ECF No. 7-4, PageID #97).  Plaintiffs were clearly given the
opportunity to request additional time to review and consult counsel regarding the totality of the
Employment Agreements, including the language in the Arbitration Agreement.  They failed to do
so.  Accordingly, the Court finds that this factor weighs in favor of finding a knowing and
voluntary waiver.

c.     Clarity of the waiver

Plaintiffs argue that the lack of clarity of the Arbitration Agreement weighs against a
knowing and voluntary waiver because: (i) the language of the arbitration provisions was
intentionally vague and confusing; and (ii) the placement of the arbitration provisions was non-
distinctive and "deliberately designed so that it is missed by the potential employee." (ECF No. 8,
PageID #166).  First, the Court has some concern over the language and placement of the
Arbitration Agreement.  The Arbitration Agreement is a single paragraph that is neither labeled,
distinguished, or set out in any particular fashion.  (ECF No. 7-3, PageID #81–82; ECF No. 7-4,
PageID #96–97).  There is no express language addressing the waiver of the right to a jury trial or
the right to proceed in a judicial forum, as well as no explicit mention that the contemplated
arbitration would be binding.  (*See* ECF No. 7-3, PageID #81–82; ECF No. 7-4, PageID #96–97).

That said, the Sixth Circuit has "flatly rejected the claim that an arbitration agreement must
contain a provision expressly waiving the employee's right to a jury trial."  *Cooper v. MRM Inv.
Co.*, 367 F.3d 493, 506 (6th Cir. 2004).  It has further explained that: "As to the failure of the
arbitration clause to include a jury waiver provision, 'the loss of the right to a jury trial is a
necessary and fairly obvious consequence of an agreement to arbitrate.'"  *Id.* (quoting *Burden v.
Check Into Cash of Ky., LLC*, 267 F.3d 483, 492 (6th Cir. 2001)); *see also Walker*, 400 F.3d at

382.  Here, the plain language of the Arbitration Agreement provides that all disputes arising out of the employment agreements and their subject matter shall be resolved through arbitration.  It necessarily follows that such disputes would not be resolved in a judicial forum.  Although the Arbitration Agreement did not provide detailed instructions on the scope and procedures of the arbitration, it reasonably notified Plaintiffs about the arbitration process that would occur in lieu of a judicial forum by stating that "arbitration [would be] administered by the American Health Law Association Dispute Resolution Service and conducted pursuant to the AHLA Rules of Procedure for Arbitration."  *See Morrison*, 317 F.3d at 654 (finding a valid waiver where the language informed the employee "that all arbitrations would occur before a neutral arbitrator, ... and that all arbitrations were to proceed according to the 'Circuit City Dispute Resolution Rules and Procedures.'").  Additionally, although the arbitration provisions were not distinctly set out, they were not buried in a maze of fine print or in a separate, lengthy document.  *See Trumbull v. Century Marketing Corp.*, 12 F. Supp. 2d 683, 687 (N.D. Ohio 1998) (finding that the plaintiff did not knowingly or voluntarily waive her rights because the arbitration clause was buried in a 60-page handbook and the language gave no indication that the employee's legal rights would be affected).  Despite its concerns, the Court finds this factor largely neutral.

> d.  Consideration for the waiver

Plaintiffs have provided no argument concerning this factor.  Regardless, the Sixth Circuit has held that continued employment alone is sufficient consideration for a waiver of the right to a jury trial under Ohio law.  *See Dantz v. Am. Apple Grp.*, LLC, 123 Fed. App'x. 702, 709 (6th Cir. 2005) (citing *Lake Land Emp't Grp. of Akron, LLC*, 804 N.E.2d at 31–32); *cf. Hergenreder v. Bickford Senior Living Grp.*, LLC, 656 F.3d 411, 421 (6th Cir. 2011) (similarly determining that

continued employment was sufficient consideration for a waiver of the right to a jury trial). Thus, the Court finds that there was sufficient consideration for the waivers in this case.

e.     Totality of the circumstances

Evaluating the totality of the circumstances, Plaintiffs have not established that their waiver of trial rights was not voluntary or knowing. Even when the Court provided Plaintiffs with an opportunity to provide supplemental briefing and buttress their arguments concerning the waiver, Plaintiffs chose not to do so, despite their ultimate burden on this issue. Reviewing the record, Plaintiffs had sufficient education and experience to knowingly waive their right to proceed in a judicial forum, they had an opportunity to review the arbitration provisions and consult private legal counsel, and there was sufficient consideration for the wavier. The language of the Arbitration Agreement, while somewhat lacking in clarity and comprehensiveness, is not sufficiently vague or confusing to overcome the other factors presented.

Accordingly, Plaintiffs must submit their claims against Psych360 to arbitration. The Court will address whether to dismiss or stay the case after addressing Defendants' request for dismissal of Mindcare as a defendant.

## III.     MOTION TO DISMISS MINDCARE AS A DEFENDANT

### A.     Standard of Review

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Rule 8(a)(2) provides

that the complaint should contain a short and plain statement of the claim, but that it should be more than a "the-defendant-unlawfully-harmed-me" accusation. *Id.* at 677–78 (citing *Twombly*, 550 U.S. at 555).  A plaintiff is obligated to provide sufficient grounds to show entitlement to relief; "labels, conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).  Although a complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.*  When reviewing a complaint, a court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

When deciding a motion to dismiss under Rule 12(b)(6) or Rule 12(c), as a general rule, the court cannot consider matters outside the pleadings, unless the motion is converted to a motion for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(d).  However, the Court may consider exhibits attached to or otherwise incorporated in the complaint without converting a Rule 12(b) motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

### B.       Law and Analysis

In the complaint, Plaintiffs generally allege that Defendants failed to pay overtime compensation to Plaintiffs in violation of the FLSA and OMFWSA.  (ECF No. 1, PageID #9–10).  Defendants argue that Mindcare should be dismissed as a defendant in this action because the complaint fails to plausibly allege that Mindcare was Plaintiffs' employer under the FLSA.  (ECF No. 7, PageID #60–65).

The relevant portions of the FLSA and OMFWSA require "employers" to pay overtime to certain types of employees. 29 U.S.C. § 207(a); Ohio Rev. Code § 4111.03.  Notably, claims brought under the OMFWSA are governed by the same standards as the FLSA.  *See* Ohio Rev. Code § 4111.03(A) ("An employer shall pay an employee . . . in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the [FLSA]."); *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007 ("[W]e need consider only federal law on this issue, as the [OMFWSA] expressly incorporates the standards and principles found in the FLSA.").  The FLSA defines employer as, "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ."29 U.S.C. § 203(d).  The FLSA further defines "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a).  "In light of its remedial purpose, the FLSA defines 'employer' more broadly than the term would be interpreted in traditional common law applications."  *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991).  If a worker is found to be "jointly employed by two entities, each of [them] is responsible for complying with the FLSA."  *Skills Dev. Servs., Inc. v. Donovan*, 728 F.2d 294, 300 (6th Cir. 1984).

Defendants specifically argue that Plaintiffs have failed to plead sufficient facts to establish that Mindcare is an employer, either under a "joint employer" or "single enterprise" theory; they assert that the complaint contains boilerplate, conclusory allegations and formulaic recitations of the elements of the economic reality test, while failing to provide underlying facts to support these allegations.  (ECF No. 7, PageID #60–63).  Plaintiffs respond that the allegations in the complaint are sufficient to establish Defendants as joint employers at the pleading stage of this proceeding.

(ECF No. 8, PageID #172–73).  They point to the following allegations of fact in the complaint as

support:

> ● "On or around August 29, 2022, Mindcare Solutions Group, Inc. acquired
> [PSYCH360]" (Complaint ¶10);
> ● "At all times relevant, Defendants were employers within the meaning of the
> FLSA . . . and employed . . . Plaintiffs" (Complaint ¶12);
> ● "Defendants are an enterprise within the meaning of 29 U.S.C. §203(r)"
> (Complaint ¶13);
> ● "Defendants . . . exercised the power over them to hire or fire; supervise and
> control their work schedules or conditions of employment; determine their rates
> and methods of payment; and maintain or was required to maintain records,
> including employment records." (Complaint ¶16);
> ● "Defendants did not pay overcome [sic] compensation to Plaintiffs[.]"
> (Complaint ¶23);
> ● "[P]ay stubs were manipulated [by Defendants]" (Complaint ¶24);
> ● "Defendants consistently failed to pay Plaintiffs" (Complaint ¶25);
> ● "The unpaid work described above was required by Defendants, was performed
> for Defendants' benefit" (Complaint ¶26), and;
> ● "Defendants failed to keep accurate records of hours and overtime worked"
> (Complaint ¶29).

(*Id.* at PageID #173) (alterations in original).  Plaintiffs further argue that dismissal at this stage of

the proceedings is premature, and this particular issue is better addressed after discovery.  (*Id.* at

PageID #174).

    In their reply brief, Defendants argue that the allegations cited by Plaintiffs are generic,

boilerplate allegations that do not provide particularized allegations as to the role/involvement of

Mindcare with respect to Plaintiffs.  (ECF No. 9, PageID #200–01).  They contend that Plaintiffs

"have simply lumped a parent and subsidiary corporation together for purposes of FLSA liability"

and the allegations in the complaint are not sufficiently plausible to establish a joint employer

relationship.  (*Id.* at PageID #202).

    Defendants do not dispute that Psych360 qualifies as an "employer" under the FLSA.

Reviewing the pleadings and the parties' briefs, there also appears to be no dispute that Psych360

was Plaintiffs' primary employer.  Thus, the true issue is whether Mindcare was also Plaintiffs'
employer.

To determine whether Plaintiffs sufficiently alleged that Mindcare was a "joint employer"
of Plaintiffs, the Court must consider only the factual allegations in the complaint.  Although the
Court must accept the factual allegations as true, legal conclusions couched as factual allegations
are not entitled to the presumption of truth and should be disregarded.  *Twombly*, 550 U.S. at 555;
*see also Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (explaining
that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation.");
*J & J Sports Prods. v. Kennedy*, No. 1:10-cv-2740, 2011 U.S. Dist. LEXIS 154644, *4 (N.D. Ohio
Nov. 3, 2011).  Plaintiffs' allegations that Defendants are "employers" and an "enterprise" within
the meaning of the FLSA and OMFWSA are the epitome of such allegations and are therefore not
entitled to presumption of truth.  (*See* ECF No. 1, ¶¶ 12–14).

Although the Sixth Circuit has not formulated a test for determining whether an entity
qualifies as a joint employer for FLSA purposes, district courts in this Circuit have considered the
following factors: "(1) whether the entity exercises authority to hire, fire, and discipline the
employee; (2) whether the entity has control over the employee's pay and insurance; and
(3) whether the entity supervises the employee."  *Branning v. Romeo's Pizza*, No. 1:19-cv-2092,
2020 U.S. Dist. LEXIS 108358, at *9 (N.D. Ohio Apr. 6, 2020); *Montanez v. Voss Indus., LLC.*,
No. 1:18-cv-1378, 2019 U.S. Dist. LEXIS 91731, 2019 WL 2330511, at *5 (N.D. Ohio May 31,
2019) (citing *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 F. App'x 587, 594 (6th Cir.
2009)); *Williams v. King Bee Delivery, LLC*, 199 F. Supp. 3d 1175, 1180–81 (E.D. Ky. 2016);
*Lemaster v. Alt. Healthcare Sols., Inc.*, 726 F. Supp. 2d 854, 864 (M.D. Tenn. 2010).  The
complaint does allege that Defendants "exercised the power over [Plaintiffs] to hire or fire;

supervise and control their work schedules or conditions of employment; determine their rates and methods of payment; and maintain or was required to maintain records, including employment records."  (ECF No. 1, ¶ 16).  However, there are two issues with these allegations.

First, this paragraph of the complaint seems to merely recite the factors for the "joint employer" test adopted by courts in the Sixth Circuit, without providing specific factual allegations to support each of these factors.  Second, these are general allegations that are ascribed to both defendants, with no differentiation or explanation as to the specific role or control exerted by Mindcare with relation to Plaintiffs.  "'[V]aguely lump[ing] all defendants together without providing any factual allegations that specify separate acts' fails to satisfy the *Iqbal/Twombly* standard."  *Hall v. Madison Police Dep't*, No. 1:18-cv-01999, 2018 U.S. Dist. LEXIS 188230, 2018 WL 5775914, at * 1 (N.D. Ohio Nov. 2, 2018) (citations omitted).  District courts addressing similar circumstances—where the pleadings fail to detail the role and control exerted by the alleged second employer—have found the pleadings insufficient to establish a joint employer relationship.  *See, e.g.*, *Boyce v. SSP Am. MDW, LLC*, No. 19 C 2157, 2019 U.S. Dist. LEXIS 127959, at *8–9 (N.D. Ill. July 31, 2019) ("Looking to all the circumstances alleged here, Boyce does not allege enough detail about SSP's role or actions to establish that it controlled his working conditions.  Boyce does not allege, for example, which entity hired him, which entity paid him, or which entity directly supervised his work.  Most of Boyce's allegations refer generally to 'Defendants,' which he defines to include both MDW and SSP, but such vague and undifferentiated allegations are not sufficient to establish a joint-employer relationship."); *Attanasio v. Cmty. Health Sys.*, 863 F. Supp. 2d 417, 425–26 (M.D. Pa. 2012) (finding the allegations insufficient to establish a joint employer relationship for a parent company where the pleadings for the two alleged employers were effectivity identical and there were no details or particularized assertions regarding the authority

and control of the parent company); *Underwood v. Chick-Fil-A, Inc.*, No. 1:09-cv-2831-TCB, 2010 U.S. Dist. LEXIS 147123, at *8–9 (N.D. Ga. Aug. 18, 2010) (explaining caselaw and stating it is "clear that a plaintiff must set forth specific facts in her complaint that make it plausible to conclude that the second entity was also her employer"); *see also Jackson v. WCM Mortg. Corp.*, No. 2:12-cv-02914-JPM, 2013 U.S. Dist. LEXIS 124252, 2013 WL 4679940, at * 3 (W.D. Tenn. Aug. 30, 2013) ("Finally, Plaintiff's Complaint does not contain any direct allegations against Wilson but only makes general allegations against the 'Foreclosing Defendants' and states that it seeks injunctive relief against them, including Wilson. Such bare allegations are insufficient to state any claim upon which relief may be granted as to Wilson.").

The cases cited by Plaintiffs in support of their argument are distinguishable. While the pleadings in *Montanez v. Voss Indus., LLC* are similar to those in this case, they included allegations that one of the defendants was a third-party staffing agency that provided employees for the other defendant. *See* No. 1:18-cv-1378, 2019 U.S. Dist. LEXIS 91731, at *14–15 (N.D. Ohio May 31, 2019). This clarification and specific factual allegation nudged the general allegations of that complaint and the joint employer argument presented in that case "across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570. There are no such allegations in this case to establish the relationship and hierarchy between Psych360 and Mindcare, nor their relationship to Plaintiffs. Similarly, both *Branning v. Romeo's Pizza*, and *Dowd v. DirecTV, LLC*, involved pleadings which sufficiently elucidated the relationship and structure between the two "joint employer" defendants; the complaint in *Branning* asserted the two defendants were a parent corporation and a franchisee, *see* No. 1:19-cv-2092, 2020 U.S. Dist. LEXIS 108358, at *10–13 (N.D. Ohio Apr. 6, 2020), and the complaint in *Dowd* asserted that one of the defendants was hired

as a subcontractor for the other, *see* No. 14-cv-14018, 2016 U.S. Dist. LEXIS 36, at *11–14 (E.D. Mich. Jan. 4, 2016).

Accordingly, the Court finds that the pleadings do not sufficiently allege a claim against Defendant Mindcare, and it shall be dismissed as a defendant.  However, the Court will afford Plaintiffs an opportunity to amend their complaint solely to allege further detail as to the relationship between Mindcare and Psych360, as well as the relationship between Mindcare and Plaintiffs, for the purpose of establishing a joint employer relationship.  Defendants may reassert any arguments raised concerning the insufficiency of the pleadings at a later time, if they believe that the amended complaint fails to cure the pleading deficiencies.

## IV.     REQUEST TO DISMISS OR STAY THE CASE PENDING ARBITRATION

Still remaining before the Court is the question of whether this case should be dismissed or stayed pending arbitration. In general, when a party has moved to compel arbitration pursuant to the FAA, the proper procedure is for the district court to stay the case until the completion of the arbitration.  *See Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) ("To enforce this dictate, [the FAA] provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement."); *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941–42 (6th Cir. 2021) (explaining that the FAA supports a district court staying case in lieu of dismissal when granting motions to compel arbitration).  Because there is a possibility the arbitrator might find that instant claims are not subject to the arbitration agreements and the Court is granting leave to amend the allegations to replead the claims against Mindcare—a party not subject to the arbitration agreement—the Court will stay the proceedings.

## V.     CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. Defendants' motion to dismiss the complaint and compel arbitration (ECF No. 7) is **GRANTED IN PART AND DENIED IN PART**;

2. Plaintiffs' claims against Defendant Psych360 shall be submitted to arbitration, in accordance with the Employment Agreements;

3. Defendant Mindcare is **DISMISSED** as a defendant **WITHOUT PREJUDICE**;

4. Plaintiffs are **GRANTED** leave to amend the complaint for the limited purpose of establishing Defendant Mindcare as a "joint employer";

5. Plaintiffs shall have thirty (30) days from the date of this order to file an amended complaint in compliance with this Order;

6. This case is otherwise **STAYED** pending completion of the arbitration;

7. The parties shall file a joint status report[s] within two (2) weeks of the competition of the arbitration proceedings.

   **IT IS SO ORDERED.**

Dated: September 30, 2024

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**